```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
SHARON MATHIS,                                               :
                                                             :
                              Plaintiff,                     :
                                                             :
              -against-                                      :   15 Civ. 7641 (LGS)
                                                             :
DOMINICAN COLLEGE,                                           :   ORDER AND OPINION
                                                             :
                              Defendant.                     :
------------------------------------------------------------ X
```

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 09/22/2016

LORNA G. SCHOFIELD, District Judge:

Plaintiff Sharon Mathis brings this action against Defendant Dominican College ("Dominican"), alleging race discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  Dominican moves for summary judgment.  For the reasons below, the motion is granted.

## I. BACKGROUND

The following facts are taken from the parties' statements pursuant to Local Rule 56.1 and the parties' submissions on this motion, including Plaintiff's declaration.  For purposes of this motion, the facts are construed, as required, in the manner most favorable to Plaintiff, the non-moving party.  *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015).

Dominican is an educational institution chartered by the Board of Regents of the University of the State of New York.  Among other degrees and academic programs, Dominican offers a "Weekend College B.S./M.S. program in Occupational Therapy" (the "Program").  Plaintiff Sharon Mathis, who is African-American, enrolled in the Program in September 2010.  At that time, Plaintiff was living in Fayetteville, North Carolina, and working thirty to thirty-five hours per week as an occupational therapy assistant.  Plaintiff flew from North Carolina to New York on weekends to attend classes in the Program.

Under the Program's academic policies, students must maintain a grade-point average of no less than B–. The Program also has a policy that students are allowed one opportunity to retake a three-credit course and one opportunity to retake a six-credit course. Failure to obtain a satisfactory grade on the second attempt results in dismissal from the program. Plaintiff denies that the Program follows the retake policy and alleges that some non-African-American students were given additional opportunities to proceed with the program following a second failure. Students who are dissatisfied with a grade they receive may pursue a three-level appellate process: first to the Program's director, then to the Office of the Academic Dean, and finally to the Graduate Studies Council.

During the Summer 2012 term, Plaintiff enrolled in a course called Advanced Practice. Advanced Practice was a required course under the Program and was co-taught by Professors Justin Lyons and Russalette Magbanua. Plaintiff received a final grade of C+ in Advanced Practice that term. Plaintiff filed an appeal with the Program's director, Dr. Sandra Countee, challenging the scores Professor Lyons had given four of her assignments and the decision by Professors Lyons and Magbanua not to offer an extra credit opportunity that they had offered in previous terms. Plaintiff admits that she did not mention race or race discrimination in this appeal. Dr. Countee denied Plaintiff's appeal by letter dated August 23, 2012.

Plaintiff retook Advanced Practice during the Spring 2013 term. The course again was co-taught by Professors Lyons and Magbanua. Plaintiff received a final grade of C this time and, because she had twice failed to achieve a satisfactory grade in the course, was dismissed from the Program. Plaintiff appealed.

In her first-level appeal to Dr. Countee, Plaintiff contested the scores Professor Lyons had given four of her assignments, requested a thorough review of all the work she had

completed in the course and alleged that Professor Lyons "had something personal against [her]," "was very unprofessional, disrespectful and demeaning when communicating with [her]," "did not have a good command of the material he was teaching," and "does not understand the assignment guidelines as outlined in the syllabus." Dr. Countee denied the appeal by letter dated April 30, 2013.

Plaintiff then brought a second-level appeal to Dr. Ann Vavolizza, an associate dean at Dominican. Dr. Vavolizza denied the appeal by email, noting that she "found no grounds on which to overturn the grade."

Finally, Plaintiff brought a third-level appeal to Sr. Beryl Herdt, the head of Dominican's Graduate Studies Council. In a three-page letter to Sr. Herdt, Plaintiff explained that she was appealing because, among other reasons: "[Professor] Lyons was retaliating" against her because she appealed her grade from the Summer 2012 term; Professor Lyons had a "biased attitude" toward her and "had come to a conclusion about the outcome of this class before analyzing [her] work"; Professor Lyons "did not demonstrate expertise in the subject he was teaching"; and Plaintiff felt "discriminated against when [Professor Magbanua] refused to respond to [her] emails." On June 17, 2013, after the Graduate Studies Council denied her appeal, Plaintiff met with several Dominican administrators to discuss further her appeal and her grievances with the Program. The administrators determined that Plaintiff had been provided sufficient procedural due process during the appeal and denied Plaintiff's request to be reinstated into the Program. It is undisputed that Plaintiff never explicitly mentioned race discrimination as a basis for her appeal.

Having exhausted Dominican's internal appeal process, Plaintiff lodged complaints with several external entities. Plaintiff filed complaints with the Accreditation Council for

Occupational Therapy Education ("ACOTE") and the Ethics Commission of the American Occupational Therapy Association ("AOTA"). ACOTE investigated the Program, and AOTA relied on ACOTE's findings and concluded that there was no evidence of an ethics violation. Plaintiff also filed a complaint with the State Department of Education, which investigated and concluded that "there is no further action to be taken" because "there is sufficient evidence that [Dominican] acted in concert with its stated policies and [Plaintiff was] afforded due process through the appeal process."

On September 28, 2015, Plaintiff commenced this action, alleging among other things that Professor Lyons "exhibited a racial animus and subjected Plaintiff to disparate treatment due to [her] race." Plaintiff seeks to hold Dominican liable for race discrimination in violation of Title VI.

## II.   LEGAL STANDARD

The standard for summary judgment is well established. Summary judgment is appropriate where the record before the Court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Tolbert*, 790 F.3d at 434. "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). "In determining whether summary judgment is appropriate, [the court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert*, 790 F.3d at 434 (citation omitted). Not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.     DISCUSSION**

Dominican's motion for summary judgment is granted because Plaintiff has not adduced evidence from which a reasonable jury could find that Dominican had actual knowledge of the alleged race discrimination.

"Title VI prohibits a recipient of federal funds from discriminating on the basis of race, color, or national origin." *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664 (2d Cir. 2012) (citing 42 U.S.C. § 2000d).  To sustain a claim under Title VI, a plaintiff must show that:  (1) "the defendant discriminated against him on the basis of race"; (2) the "discrimination was intentional"; and (3) "the discrimination was a substantial or motivating factor for the defendant's actions." *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (internal quotation marks and citation omitted).

The Supreme Court has held that, for claims not involving an official policy of the defendant, "a damages remedy will not lie . . . unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [defendant's] behalf has actual knowledge of discrimination in the [defendant's] programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).  Although *Gebser* involved a Title IX claim, the Second Circuit has applied *Gebser*'s "actual knowledge" requirement to Title VI claims.  *See Zeno* 702 F.3d at 666 ("Constructive knowledge is not enough; only actual knowledge is a predicate to liability [under Title VI]." (citation omitted)); *DT v. Somers Cent. Sch. Dist.*, 348 F. App'x 697, 699 (2d Cir. 2009) (summary order) ("Because the scope of the implied remedy under Title VI is 'parallel' to that under Title IX, a Title VI claim cannot be premised merely on constructive notice." (citation omitted)).

Here, the undisputed evidence shows that, before Plaintiff commenced this lawsuit, Dominican lacked actual knowledge of the alleged race discrimination. None of Plaintiff's appeals to Dominican administrators or complaints to external entities mention race discrimination. Additionally, nothing in the record indicates that Defendant administrators knew of the alleged race discrimination and failed to respond. "Without a showing that [plaintiff's] complaints to [defendant] referenced alleged racial . . . discrimination, and not merely generic perceived teaching failures, the College cannot be charged with notice of an alleged violation of Title VI . . . ." *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 533 (S.D.N.Y. 2013) (citation omitted); *accord Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F. Supp. 3d 338, 348 (S.D.N.Y. 2014) ("Plaintiffs' failure to notify Defendants of the alleged discrimination is fatal to his Title VI claim.").

To avoid this outcome, Plaintiff argues that her internal appeals put Dominican on notice of the alleged race discrimination by referencing disparate treatment. No reasonable finder of fact could agree with this conclusion. Plaintiff complained in her first appeal that she was "graded unfairly in comparison to [her] classmates," but she did not assert that such disparate treatment was based on race nor did she describe the racial composition of her class. She also asserted in the first appeal that "Mr. Lyon had something personal against me," but did not specify what that "something" might be. In her third appeal, she attributes Professor Lyons's "unfair grading" to retaliation for her having appealed her grade rather than any racial animus. Plaintiff's vague disparate treatment allegations did not put Dominican on even constructive notice, which in any event would be insufficient for a damages claim under Title VI. *See Gebser*, 524 U.S. at 285, 290; *Somers Cent. Sch. Dist.*, 348 F. App'x at 699 ("In the context of the implied right of action under Title IX [and Title VI], however, the Supreme Court has

6

rejected Title VII's constructive notice standard and required evidence of actual knowledge of discrimination to hold a defendant liable for money damages." (citing *Gebser*, 524 U.S. at 283–85)).  Consequently, Plaintiff's Title VI claim is dismissed.

## IV. CONCLUSION

For the foregoing reasons, Dominican's motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motions at Dkt. No. 36 and 46, and close the case.

SO ORDERED.

Dated: September 22, 2016
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**